IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


SHARON L. MENDUM                                                        PLAINTIFF

V.                                                        CAUSE NO. 1:10CV537-LG-RHW

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                         DEFENDANT


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Sharon L. Mendum's [15] Motion for Judgment on the Pleadings.  Plaintiff challenges the final decision of the Commissioner of Social Security affirming an administrative law judge's (ALJ) determination that Plaintiff was not disabled.  In her motion, Plaintiff asserts that the ALJ (1) failed to follow the treating physician rule; and (2) failed to evaluate her credibility properly.

### Factual Background

Plaintiff is a high school graduate who was 54 years old at the alleged onset of disability. [12-1] at 41, 43.  Her past relevant work includes fast food worker; biscuit cook; customer service representative; tax preparer; stitcher; and retail store manager.  *Id.* at 67-68.  Plaintiff alleges that she has been disabled since October 19, 2005, because of back and neck pain.  The medical evidence also indicates that Plaintiff has suffered from carpal tunnel syndrome, rotator cuff injury, migraine headaches, diabetes, and hypertension. [12-2] at 33, 80-82, 168.

Dr. Mathew Wallack, a board certified neurologist, began pain management

treatment of Plaintiff on October 26, 2005. *Id.* at 80. There is an extensive treatment history from Dr. Wallack, indicating that he examined and treated Plaintiff through June 5, 2007. *Id.* at 45-145. Dr. Wallack initially diagnosed Plaintiff with chronic low back pain and right proximal leg pain, long-standing neck pain, bilateral upper extremity pain related to rotator cuff syndrome and carpal tunnel syndrome, and headaches. *Id.* at 81-82. A review of the record reveals that Dr. Wallack has administered repeated epidural steroid injections in an effort to treat Plaintiff's back pain. *See id.* at 45-145. As medications, Plaintiff has taken Neurontin, Flexeril, Durgesic, OxyContin and Methadone. *Id.* at 70, 81. Dr. Wallack's treatment records also indicate treatment with radiofrequency and physical therapy. *Id.* at 66, 68. Dr. Wallack also reported limited motion of the spine, tenderness and muscle spasms, abnormal gait, and decreased sensation. *Id.* at 73, 76, 81.

In a report dated July 28, 2006, Dr. Wallack opined that Plaintiff was unable to return to work as a result of her lumbar and cervical conditions. *Id.* at 66. In an August 25, 2006, report, he opined that Plaintiff's pain was disabling because she was unable to sit for more than 15 minutes at a time. *Id.* at 61. In a Lumbar Spine Impairment Questionnaire, dated October 13, 2008, Dr. Wallack diagnosed spinal degenerative disease with a poor prognosis. *Id.* at 46-52. He based his opinion on clinical findings of limited motion in the cervical and lumbar spines; tenderness and muscle spasms of the cervical, thoracic, and lumbar spines; swelling of the lumbar

spine; an antalgic gait; sensory loss involving the distal proximal extremities; and diffuse trigger points. *Id.* Dr. Wallack also cited to MRI results in support of his findings. *Id.* Dr. Wallack reported that the symptoms and limitations were present beginning in October 2005, when he first began treating her. *Id.*

As limitations, Dr. Wallack concluded that Plaintiff was able to sit less than one hour total and stand/walk less than one hour total during an 8-hour work day. He also noted that Plaintiff needed to get up and move around for 15 minutes after sitting for 15 minutes. He further opined that Plaintiff was able occasionally to lift/carry up to 5 pounds, but never more. He concluded that Plaintiff's pain and other symptoms were severe enough to interfere with her attention and concentration. He further noted that Plaintiff was capable of handling no more than low stress. He opined that Plaintiff required unscheduled breaks to rest approximately every hour for 15 to 30 minutes per day. Dr. Wallack estimated that Plaintiff would be absent from work more than three times a month as a result of her condition. *Id.*

Dr. Eric Wolfson, a board certified neurosurgeon, evaluated Plaintiff on May 22, 2006, based upon a referral from Dr. Wallack. *Id.* at 32-33. Dr. Wolfson diagnosed intractable lumbar discogenic pain syndrome and recommended a discogram. *Id.* On July 19, 2006, Dr. Wolfson recommended physical therapy followed by possible surgery, if therapy was unsuccessful. *Id.* at 31. On August 16, 2006, Plaintiff reported no improvement from physical therapy; however, Dr.

Wolfson recommended continued conservative treatment. *Id.* at 30. Plaintiff underwent an MRI of her lumbar spine on September 6, 2006. *Id.* at 29. On September 11, 2006, Dr. Wolfson examined the MRI results and recommended no surgical treatment. *Id.* at 28. On October 4, 2006, he recommended further treatment with Dr. Wallack. *Id.* at 27.

Dr. Lennon Bowen, a board certified neurologist, examined Plaintiff On January 23, 2006, for complaints of bilateral arm pain and headaches. *Id.* at 167-68. Dr. Bowen diagnosed migraine headaches and carpal tunnel syndrome. *Id.*

On August 16, 2006, Plaintiff visited Dr. Philip Compton complaining of back pain. *Id.* at 163. Dr. Compton was Plaintiff's regular treating physician as of the date of the ALJ hearing. [12-1] at 47-48. On June 5, 2007, Dr. Compton filled out a form for the Office of Disability Determination Services (DDS) indicating that Plaintiff suffered from hypertension and diabetes, each with a good prognosis. [12-2] at 147. He did not assess any functional limitations. Nor did he mention any diagnosis with respect to Plaintiff's back and neck. *Id.* On October 12, 2007, Dr. Compton filled out a second DDS form, which did list lower back pain as a diagnosis and indicated that Plaintiff's lower back pain had a "fair" prognosis. *Id.* at 146. The administrative record indicates that Plaintiff visited Dr. Compton for examination or follow-up on more than a dozen occasions beginning in August 16, 2006, through February 11, 2010. *Id.* at 148-66, 182-96.

On August 15, 2007, Dr. Robert L. Cobb performed a consultative

4

examination at the behest of the Social Security Administration. *Id.* at 34-35. Dr. Cobb diagnosed chronic low back pain syndrome, right shoulder pain with history of rotator injury, history of occasional headaches, obesity, hypertension, diabetes, and asthma. *Id.* Dr. Cobb opined that Plaintiff had functional limitations "as noted above;" however, the report is silent as to Plaintiff's functional limitations other than the limitations recited in Plaintiff's history. *Id.* These limitations include inability to stand on her feet more than 5 to 10 minutes at a time; no radiating pain in the legs; ability to lift and carry 10 to 15 pounds, occasionally, but pain with any greater weight; and ability to bend at the waist and stoop occasionally. *Id.*

On August 28, 2007, Dr. James Griffin reviewed Plaintiff's medical records, including Dr. Cobb's report, and assessed her residual functional capacity (RFC). *Id.* at 37-44. Dr. Griffin listed Plaintiff's primary diagnosis as a herniated disc and chronic pain. *Id.* He opined that Plaintiff could lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; could sit/stand/walk for 6 hours each in an 8-hour workday; was limited in her ability to reach in all directions (including overhead); and should avoid even moderate exposure to fumes, odors, dusts, gasses, and poor ventilation due to asthma and chronic cough. *Id.*

Plaintiff testified at the hearing conducted by the ALJ and reported on her back and neck pain and the limitations caused by the pain. [12-1] at 41-67. Specifically, she testified that she could not sit or stand for long periods of time and needed a job that allowed her to "constantly be up and down." *Id.* at 45. She stated

that she could stand for 5 to 10 minutes. *Id.* at 56. She also testified that she was able to sit no longer than 30 minutes before needing to stand up and move around. *Id.* Plaintiff further testified that she could lift 10 pounds with both hands comfortably. *Id.* at 57.

A vocational expert also testified at the hearing. *Id.* at 67. The ALJ presented the vocational expert with a hypothetical based on Plaintiff's age, education, and work history, and her ability to perform light or sedentary work. *Id.* The ALJ indicated to the vocational expert that Plaintiff would require a sit/stand option; only occasional bending, kneeling, and stooping; no overhead reaching; and a need for an air conditioned environment with no extreme heat or cold or exposure to gas, fumes, dust, or noxious odors. *Id.* at 68-69. Based on these limitations, the vocational expert concluded that Plaintiff would be able to perform her past work as a customer service representative and tax preparer. *Id.* at 69. The vocational expert classified both of these jobs as sedentary. *Id.* at 66. If the individual was also markedly limited in her ability to concentrate during an 8-hour day, the vocational expert stated that Plaintiff would be unable to perform any work. *Id.* at 69.

## Standard of Review

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the

evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).

The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

## ALJ's Decision

The ALJ issued a decision on July 31, 2009, finding severe impairments of ruptured disc at L3-4, chronic low back pain, obesity, and asthma. [12-1] at 17-22. Nevertheless, the ALJ concluded that Plaintiff retained the RFC to perform light work with a sit/stand option; only occasional bending, kneeling, and stooping; no exposure to gases, fumes, odors, and dusts; only work in environments with air

conditioning; and no requirements of overhead reaching. Based on this RFC, the ALJ found that Plaintiff was capable of performing her past work as a tax preparer and customer service representative.

## Law and Analysis

Plaintiff argues that the ALJ failed to follow the treating physician rule. Specifically, Plaintiff asserts that the ALJ impermissibly rejected the opinion of Dr. Wallack regarding the limits of Plaintiff's ability to work. Dr. Wallack essentially concluded that Plaintiff was incapable of performing any work as a result of chronic back pain. Plaintiff argues that Dr. Wallack's opinion is uncontradicted by other substantial evidence in the record; therefore, it should be given controlling weight.

The opinion of a treating physician is to be given controlling weight if the opinion is well-supported by clinical and laboratory findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. 404.1527(d)(2); *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). The ALJ may accord lesser weight to a treating physician's opinion for good cause, such as where the treating physician's opinion is conclusory, not credible, or unsupported by objective medical evidence or clinical laboratory findings. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Id.* at 453 (emphasis in the original). The criteria for assessing a treating physician's opinion

as required by 20 C.F.R. § 404.1527(d)(2) are: (1) the physician's length of treatment of the claimant;  (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

The ALJ is free to assign little or no weight to the opinion of any physician for good cause. *Newton*, 209 F.3d at 455-56.  A treating physician's opinion may be rejected when the evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176. "If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence form the treating physician". *Newton*, 209 F.3d at 453.

In this case, there is substantial evidence in the record, from both treating and examining sources, to controvert the opinion of Dr. Wallack.  The ALJ gave "little weight" to Dr. Wallack's opinion. [12-1] at 21.  By contrast he gave "significant weight" to the findings and opinions of Dr. Griffin, Dr. Cobb, and Dr. Compton. *Id.*  Dr. Compton was a treating physician whose treatment of Plaintiff both overlapped and post-dated Dr. Wallack's.  The ALJ rejected Dr. Wallack's opinion based in part on the records of Dr. Compton.  The ALJ concluded that

> [i]t is true that clinical findings from Philip Compton, M.D., through February 5, 2009, show the claimant required occasional treatment for limitations cited in the RFC, they also confirm she responded well to

>treatment. (Exhibits 8F and 9F). It is noted the most recent consultation records show that claimant voiced no complaints. (Exhibit 9F).

*Id.* Moreover, in a DDS form dated October 12, 2007, Dr. Compton listed Plaintiff's lower back pain as a diagnosis, but indicated that the condition had a "fair" prognosis. Dr. Compton was silent as to any limitations from Plaintiff's conditions.

Dr. Cobb was not a treating physician, but he was an examining physician who conducted a clinical exam of Plaintiff at the behest of the Commissioner. Dr. Cobb noted, among other things, that Plaintiff had good range of motion and no tenderness or spasm in her back; she was able to fully squat; and there were no weaknesses or sensory changes in the lower extremities. Dr. Cobb also recited Plaintiff's functional limitations, which indicated that she could stay on her feet no more than 5 to 10 minutes at a time and was able to lift 10 to 15 pounds, occasionally. He noted that she was able to bend at the waist and stoop, occasionally.

Dr. Griffin reviewed Plaintiff's medical records, including Dr. Cobb's report, and provided an assessment of Plaintiff's RFC. Dr. Griffin concluded that Plaintiff had some limitations as a result of her back condition, but the limitations he outlined were not as severe as those outlined by Dr. Wallack. The ALJ further found that Plaintiff's testimony at the hearing "confirmed limitations allowed in the RFC". [12] at 21. In light of the ALJ's reliance on the opinions and findings of these three medical doctors (one of whom was a treating physician and one of whom was an examining physician), as well as Plaintiff's own testimony regarding her

limitations, the Court concludes that there was good cause to reject the opinion of Plaintiff's treating physician, Dr. Wallack; and substantial evidence to support the ALJ's findings with respect to Plaintiff's disability.

Plaintiff also argues that the ALJ failed to properly evaluate her credibility. Specifically, she argues that the ALJ failed to give sufficient reasons for discounting her testimony and that the ALJ mischaracterized the record regarding Plaintiff's medications. In assessing Plaintiff's claims of disability, the ALJ must consider the claimant's subjective complaints of pain, but also is allowed to considered other medical evidence in determining the extent of the pain. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). The ALJ is entitled to considerable deference when assessing the disabling nature of claimant's pain, given the subjective nature of such complaints. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Whether a claimant is able to work despite some pain is within the province of the Commissioner and should be upheld if supported by substantial evidence. *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).

In considering Plaintiff's subjective complaints, the ALJ found that

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.

[12-1] at 21. In support of the RFC, the ALJ relied in part on August 15, 2007, chest and lumbar spine x-rays that found no significant abnormalities. *Id.* The ALJ also relied on the clinical findings of Dr. Cobb who concluded that Plaintiff

12

displayed good range of motion in the lower back, was able to squat, and exhibited no weakness or sensory changes or findings of positive straight leg raise. *Id.* The ALJ found that Plaintiff had the RFC

> to perform light work, with a sit, stand option. In addition, the work must require only an occasional ability to bend, kneel, and/or stoop and not be performed in environments with exposure to gases, fumes, odors, or dust. Further, the work must be performed in environments with air conditioning and not require an ability to overhead reach.

[12-1] at 22. During the hearing, Plaintiff testified that she could not sit or stand for long periods of time, but needed a job that allowed her to "constantly be up and down." She testified that she is able to sit for 30 minutes before needing to change position. She also testified that she could lift 10 pounds comfortably. Thus, the ALJ took into account Plaintiff's subjective statements and concluded that this testimony "confirmed limitations allowed in the RFC" while recognizing that Plaintiff indicated that "the severity of the symptoms had increased." [12-1] at 21.

Plaintiff takes exception with the ALJ's finding that her medications were effective and caused no side effects. At the time of the hearing, Plaintiff indicated that she took ibuprofen for her pain, but that she no longer took narcotic medication (OxyContin). An examination of Plaintiff's testimony reveals that the ALJ's findings are supported by substantial evidence, namely Plaintiff's own testimony. Although the medical records suggest that Plaintiff had a history of side effects from narcotics, Plaintiff testified that the medication (ibuprofen) she was taking at the time of the hearing did not cause any side effects. [12-1] at 50-51. Additionally, Plaintiff testified that the ibuprofen provided slight to moderate relief. *Id.* at 51.

To the extent that the ibuprofen provided some relief, it was not a mischaracterization of the record for the ALJ to say that the medication was "effective". Thus, the ALJ's findings are supported by substantial evidence in the record.

As a final consideration, Plaintiff relies heavily on this Court's opinion in *Lowery* to support her motion. *Lowery v. Astrue*, 2010 WL 5625967 (S.D. Miss. Dec. 21, 2010). Although the *Lowery* opinion provides a helpful starting point and analytical framework, the Court finds that *Lowery* is distinguishable on several key points. First, in assessing Plaintiff's limitations, the ALJ in this case relied on medical evidence from both a treating physician (Dr. Compton) and an examining physician (Dr. Cobb). In *Lowery*, the ALJ relied only on an examining physician and a non-treating, non-examining physician. *See Lowery*, 2010 WL 5625967, at *5-7. Second, the limitations ascribed by the ALJ in this case are supported by evidence from Dr. Cobb's opinion and Dr. Griffin's assessment, and to some extent by Plaintiff's own testimony. In *Lowery*, the ALJ's findings as to Lowery's residual functional capacity were based primarily on the conclusions of a non-examining, non-treating physician whose opinion the ALJ found to be "not wholly consistent with the record" and gave only "some weight". *Id.* at *6. Finally, in *Lowery*, unlike in the present case, the ALJ did not adequately explain the basis for Plaintiff's limitations and "created a set of limitations that does not find support in any of the reports from the medical experts." *Id.* at *5, *7. In the present case, the ALJ cited

as support the opinions of Dr. Cobb, Dr. Griffin, and to some extent, Plaintiff's own testimony, when he determined her limitations.

Based on the foregoing, the Court finds that Plaintiff's Motion for Judgment on the Pleadings should be denied and the complaint dismissed with prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff Sharon Mendum's [15] Motion for Judgment on the Pleadings is **DENIED**. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 15th day of March, 2012.

> s/ *Louis Guirola, Jr.*
> LOUIS GUIROLA, JR.
> CHIEF U.S. DISTRICT JUDGE